## S. C. BOYD, Appellant, v. BANK OF MERCER COUNTY, Respondent.

Kansas City Court of Appeals, November 3, 1913.

1. SALES: Personal Property: Cash: Title. As between the parties, a sale of personalty for cash does not pass title to the property if the money is not paid by the buyer.

2. ———: ———: ———: Bill of Lading: Check for Purchase Money: Transfer of Bill: Value not Paid. A seller and purchaser resided twelve miles apart. The seller, at the direction of the buyer, loaded a car of corn at the seller's residence, for shipment to market, and took from the railway company a bill of lading in the buyer's name. He then sent the bill of lading to the buyer by mail together with the weight of the corn,

showing that it came to $575 at the purchase price per bushel. It was agreed the buyer, on receipt of the bill, should send his check in payment by mail to the seller. The buyer did not do so, but immediately upon receiving the bill transferred it, with a draft attached for $575 to a bank at his place, the latter entering that amount on its books as a credit to the buyer The bank had no notice that the seller had any interest in the corn, but it did not pay out any money for the bill; on the contrary collected the proceeds of a sale of the corn. *Held*, that the sale was for cash, and that no title passed to the buyer and that the bank was liable to the seller for the purchase price.

3. ———: ———: ———: Bill of Lading: Negotiable: Notice: Value. While a bill of lading is negotiable and its transfer will take the title to the property, it will not have that effect if the transferee has notice of lack of title; or, pays nothing for it.

Appeal from Mercer Circuit Court.—*Hon. Geo. W. Wanamaker*, Judge.

REVERSED AND REMANDED (*with directions*).

*A. G. Knight* for appellant.

*E. M. Harber, Ira B. Hyde, A. M. Hyde* and *E. R. Sheetz* for respondent.

ELLISON, P. J.—Plaintiff lives at Cainsville and defendant bank and a business institution known as Farmers Elevator & Supply Company are located at Princeton, twelve miles away. Plaintiff bought corn of farmers near the former place, paying them in checks on a bank in Cainsville. He had an arrangement with the Elevator & Supply Company whereby he sold corn to it. The delivery and mode of payment were that plaintiff would have the corn weighed and loaded for shipment in a railway car at Cainsville to the point designated by the Elevator & Supply Company taking a bill of lading in name of the Elevator & Supply Company and mailing it, with the weights,

to that company at Princeton, and the latter, on receipt, would send him a check for the purchase price.

In the instance resulting in this action, plaintiff, on the 25th of June, 1912, had a lot of corn weighed and loaded in a car, taking a bill of lading (destination St. Louis) in the name of the Elevator & Supply Company. He mailed this to that company at Princeton, but the company failed to send plaintiff its check for the price. It took the bill of lading with a sight draft attached on a party in St. Louis for $575, to the defendant bank and indorsed it to the bank, receiving credit on the books of the bank for that amount. The bank stopped payment of the draft, had the corn sold after its arrival in St. Louis, and received the proceeds. The Elevator & Supply Company was wholly insolvent. The bank did not pay out any money for the bill of lading, or on account of the credit thereof.

In these circumstances plaintiff demanded of the defendant the $575 represented by the bill of lading, and being refused he instituted this action. The case is made to turn on the question whether the transaction shows a sale of the corn by plaintiff for cash. If it does, no title passed to the Elevator & Supply Company and none passed on its transfer of the bill of lading to the bank, unless, of course, the latter was an innocent purchaser. [Johnson Brinkman Co. v. Central Bank, 116 Mo. 558; Strother v. McMullen Lumber Co., 200 Mo. 647.]

While the bill of lading was sent to the Elevator & Supply Co., yet that was for the reason that the parties living at places twelve miles apart, it was necessary that the bill, with the weights of the corn, should be sent to that company so that it might know the corn had been delivered into the car at Cainsville for shipment, and be informed of the amount it was to pay. We think the evidence makes clear that the sale was a cash sale and the fact that payment was to be by

check did not change its character. A case in this respect like this, in essential particulars, was decided by the Springfield Court of Appeals in an opinion by Cox, J., and it fully and clearly bears out our construction of this contract and statement of the law applicable thereto. [Wright v. Trust Co., 144 Mo. App. 640.]

We are cited to Bank v. Smith, 107 Mo. App. 178, and Smith v. Bank, 120 Mo. App. 527, but we do not see where they in any way sustain the defense. So we are cited to Bank v. Milling Co., 163 Mo. App. 135, and likewise find it does not affect this case. We recognize all the rights of seller and purchaser of a bill of lading under sections 11956 and 11957, Revised Statutes 1909, and the effect of the transfer of the bill in passing title. The negotiation of such bill will transfer the title to the property shipped, to a purchaser for value without notice, even if the seller himself has no title as between him and the person from whom he bought. But in this case defendant, as stated above, though ignorant that plaintiff's sale to the Elevator & Supply Co. was a cash sale, did not pay anything to that company for the bill of lading. All defendant did was to enter a credit on its books to the company, which was not afterwards honored. In such circumstances defendant has no right to resist plaintiff's recovering the proceeds of the property, the title to which had not passed from him.

It was shown that on the day of the deposit defendant's books showed a balance of account against the Elevator & Supply Company of $7.51. Viewing the facts in one way, defendant also paid out on the company's account after its receipt of the deposit, the sum of $19.96. Plaintiff appears to make no particular objection to these items, amounting to $27.47, and we will therefore allow them to defendant as a credit.

We note that defendant had other dealings with the insolvent Elevator & Supply Company, which had

no connection with plaintiff, whereby that company by its fraud became largely indebted to defendant. But this was not known to it when the matters here litigated transpired, and is conceded to be immaterial except, as stated in the briefs, to show defendant's good faith in the controversy.

The judgment will be reversed and the cause remanded with directions to enter judgment for plaintiff, less the credit. All concur.